IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GRANITE STATE INSURANCE COMPANY, A MEMBER COMPANY OF AMERICAN INTERNATIONAL GROUP, INC., and AIG CLAIMS SERVICES, INC., a wholly owned subsidiary of American International Group, Inc., | |
| Plaintiffs, | HON. JEROME B. SIMANDLE |
| v. | Civil No. 03-1220 (JBS) |
| UJEX, INC., UJEX ENTERPRISES, INC., JUSTIN M. SCIARRA, AJAX, INC., AJAX ENTERPRISES, INC., AJEX, INC., STAFF AMERICA, INC., PAUL BROWN AGENCY, PAUL BROWN, HOMESTEAD ASSURANCE BROKERAGE, PAUL HOPKINS, AMERICA'S PEO, THE CURA GROUP, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Robert J. Reilly, III, Esq.
FITZPATRICK, REILLY, SUPPLE & GAUL
Murray Hill Office Center
571 Central Avenue
New Providence, NJ 07974
    Attorney for Plaintiffs

Paul W. Verner, Esq.
VERNER SIMON, P.C.
111 Dunnell Road
Maplewood, NJ 07040
    Attorney for Defendants UJEX, Inc.; UJEX Enterprises, Inc.;
    Justin M. Sciarra; AJAX, Inc.; AJAX Enterprises, Inc.; AJEX,
    Inc.; Paul Brown Agency; Paul Brown; and Homestead Assurance
    Brokerage

Robert M. Smolen, Esq.
SWARTZ, CAMPBELL & DETWEILER, ESQS.
1300 Route 73
Bloom Court, Suite 101
Mt. Laurel, NJ 08054
     Attorney for Defendants Staff America, Inc.; Paul Hopkins;
     and The Cura Group

M. Karen Thompson, Esq.
Ann Marie Simeone, Esq.
NORRIS, McLAUGHLIN & MARCUS
721 Route 202-206
P.O. Box 1018
Somerville, NJ 08876-1018
     Attorney for Defendant Worldwide Labor Support of Illinois,
     Inc.

**SIMANDLE**, District Judge:

     This matter comes before the Court upon the unopposed motion
of Defendant Worldwide Labor Support of Illinois, Inc.
("Worldwide") to alter or amend this Court's February 7, 2005
Order, pursuant to Federal Rule of Civil Procedure 59(e) and
Local Civil Rule 7.1(i).  The issue presented at this time is
whether the Court should decide Worldwide's previous motion for
summary judgment.  For the reasons discussed below, Defendant's
motion to alter or amend this Court's prior Order will be granted
and the reinstated unopposed motion for summary judgment of
Defendant Worldwide will be granted as well.

## I.   <u>BACKGROUND</u>

A.   <u>Procedural History</u>

     Plaintiffs initiated this case by Complaint dated March 12,
2003, which alleged that the Defendants conspired to defraud
Granite State Insurance Company in connection with the

procurement of workers' compensation insurance policies at significantly discounted premiums.  Plaintiffs allege that this fraud was carried out by utilizing employment leasing companies as a vehicle to apply for workers' compensation coverage and then misrepresenting on insurance applications the class and number of employees hired as well as the estimated payroll.

On May 25, 2004, Plaintiffs filed an Amended Complaint, which, in Count I, seeks a declaration that two workers' compensation policies of insurance that it issued to Defendants are void <u>ab initio</u>, as a result of Defendants' fraud.[1]  The remaining counts of the Amended Complaint allege federal and state RICO violations, federal and state fraud claims, conspiracy claims, negligent misrepresentation, conversion, breach of fiduciary duty, and breach of contract against the various Defendants.

Worldwide filed an Answer and Defenses to the Amended Complaint and a Counterclaim.  Count I of Worldwide's Counterclaim alleges that Worldwide was an insured employer under insurance Policy No. 6742564 ("Policy"), and that Granite breached the insurance contract by refusing to pay any compensation or medical benefits, to or on behalf of, employees

_____

[1]The allegations of the Amended Complaint principally concern Policy No. 8541147.  The second policy named in the Amended Complaint, Policy No. 6742564, is the policy under which Worldwide claims coverage.  (Amended Compl. at ¶90.)

3

for whose benefit the Policy was issued ("Claimants") and by refusing to defend Worldwide against their claims.  Count II of Worldwide's Counterclaim alleges that Worldwide and Claimants are third party beneficiaries of the Policy and, in that capacity as well, have been damaged by Granite's failure to defend or pay the claims made under the Policy.

On November 23, 2004, Worldwide moved for summary judgment, seeking an order granting judgment in favor of Worldwide and against Plaintiffs as to Count I of the Amended Complaint; granting judgment as to liability in favor of Worldwide as to its Counterclaim and compelling Plaintiffs to provide insurance coverage to Worldwide and Claimants consistent with the terms of the Policy; and granting judgment in favor of Worldwide and against Plaintiffs as to Counts II through XII of the Amended Complaint.  Although Plaintiffs' counsel requested a ten day extension of the time in which to respond to Worldwide's motion, which this Court granted counsel in early December 2004, that motion was ultimately unopposed.

On February 7, 2005, this Court dismissed Plaintiffs' federal claims and declined to exercise jurisdiction over the remaining state law claims.  The Court thereby dismissed Worldwide's summary judgment motion without discussing the merits, declining to exercise supplemental jurisdiction over the state law claims which were at issue therein.

Subsequently, on February 16, 2005, Worldwide filed the instant motion to amend or alter the Court's Opinion and Order of February 7, 2005, urging the Court to recognize diversity jurisdiction over this claim and to decide the merits of the claim.

B.   <u>Underlying Facts</u>

The Policy which is the subject of Worldwide's summary judgment motion (Policy No. 6742564) only afforded coverage for Worldwide's employees; it does not cover any of the employer Defendants in this action.  Worldwide is a corporation of the State of Illinois and is in the business of providing skilled labor to its customers.  (Declaration of Wayne Cook at ¶2.) Granite State is a corporation with a principal place of business in New Jersey, and is doing business in New Jersey.  (Amended Compl. at ¶2.)  AIG is a corporation with a principal place of business in New York, and is also doing business in New Jersey. (Amended Compl. at ¶3.)

On August 6, 2001, Worldwide entered into a Service Agreement ("Service Agreement") with America's PEO, a professional employer organization, also known as an employee leasing company.  (<u>Id</u>. at ¶34.)  Pursuant to the terms of the Service Agreement, America's PEO agreed to supply persons to Worldwide to conduct its business.  America's PEO was designated the employer of such personnel for all administrative purposes,

5

and assumed responsibility on behalf of Worldwide for all obligations typically imposed on employers under the law.  (Cook Decl., Ex. A.)  Worldwide made all necessary payments to America's PEO under the Service Agreement.  (Cook Decl. at ¶4.) The Service Agreement expressly obligation America's PEO to provide and maintain workers' compensation insurance coverage for the employees supplied to Worldwide, and to provide Worldwide with Certificates of Insurance evidencing the issuance of such policies of insurance.  (Cook Dec., Ex. A at ¶2b.)

Based on the nature of the work being performed by the employees supplied to Worldwide, it also was necessary for America's PEO to provide and maintain insurance coverage for claims under the United States Longshore and Harbor Workers' Compensation Act ("Act").  Specifically, certain employees covered under the Service Agreement were assigned by Worldwide to work at the Kvaerner Philadelphia Shipyard in Pennsylvania. (Cook Decl. at ¶5; Declaration of M. Karen Thompson, Ex D at #2, 7; America's PEO's Answer to Worldwide's Crossclaim at ¶11.) America's PEO contracted for the procurement of the required insurance coverage with Justin Sciarra.  (Thompson Decl., Ex. D at #2.)  On August 16, 2001, Justin Sciarra applied for insurance coverage under the name UJEX Enterprises, Inc. ("UJEX") on behalf of Worldwide.  The policy application expressly stated that it was to cover employees leased for shipbuilding operations at

Kvaerner Philadelphia Shipyard, and otherwise disclosed the
nature of the risk.  (Deposition of Susan Pinto at 63-64.)

Susan Pinto, an underwriter employed by AIG, was the AIG
representative who reviewed the application and decided to issue
the policy.  (Pinto Depo. at 9.)  Granite could not identify any
information on the application for insurance for the policy that
was incorrect or false.  (Id. at 110.)  The worksite, job duties
and job classification relating to the policy were accurately
represented to Granite.  (Id. at 66.)  Pinto approved the
issuance of the Policy, which provided coverage for claims under
Pennsylvania's workers' compensation statute and under the Act.
The Policy period was from August 22, 2001 to August 22, 2002.
(Id. at 18-23; 27-28.)  Granite admits that the policy
application contained all of the necessary information to enable
it to evaluate the risk, to set the initial premium and to
determine whether to issue the Policy.  (Id. at 41, 53, 63-66,
77-78.)

In February 2002, and on various other dates, America's PEO
provided certificates of insurance to Worldwide stating that the
Policy had been issued by Granite to UJEX and America's PEO.  The
certificates listed Worldwide as an additional insured under the
Policy.  (Cook Decl. at ¶6 and Ex. B.)  At some point prior to
October 26, 2001, at Pinto's request, Granite assigned Safety
Resources, LLC to conduct a physical investigation of the

7

Kvaerner work site and compile a loss control survey report ("Report") to enable Granite to complete its risk assessment of the operation and collect underwriting information.  (Pinto Depo. at 20, 56.)

The Report, dated October 26, 2001, expressly noted Worldwide's role as hiring the skilled laborers who were contracted to work as shipbuilders at the shipyard.  (Pinto Depo. at 70.)  Through the Policy application or the Report prepared by Safety Resources, LLC, Granite was aware, or should have been aware of the following: (1) there was an employee leasing operation involved in the insured's business (Pinto Depo. at 41); (2) one of the covered locations was to be the Kvaerner ship building site at Broad Street, Philadelphia, Pennsylvania (Pinto Depo. at 53); (3) the workers to be covered under the Policy were going to work at the Kvaerner shipyard, performing shipbuilding operations (Pinto Depo. at 53, 63); and (4) Worldwide was supplying the labor for the worksite, including hiring and training the workers (Pinto Depo. at 77-78.)

The fact that UJEX was listed as an insured on the Policy application did not have anything to do with how Granite estimated the degree or the character of the risk nor did it have anything to do with how Granite fixed the premiums.  (Pinto Depo. at 63-64.)  Moreover, the fact that UJEX was listed as an insured on the Policy application did not influence Pinto's judgment as

an underwriter about whether or not to issue the Policy.  (Id. at
64.)  Granite admitted that the failure to include Worldwide as
an additional insured on the Policy application did not affect
the hazard that it assumed or the premiums it initially charged.
(Id. at 66.)

On November 19, 2001, Pinto reviewed the Report that she had
requested.  (Id. at 70.)  Granite did not adjust the premium to
be charged for the Policy as a result of any information
contained in the Report, nor did Granite cancel, terminate or
rescind the Policy as a result of the information contained in
the Report.  (Id. at 79.)  Granite issued a payment on one claim
under the Policy to Worldwide employee, Orin Kendrick.  (Id. at
89.)

Justin Sciarra requested that the Policy be cancelled
effective January 21, 2002.  (Id. at 86, 95-97, 99; Thompson
Decl., Exs. G and H.)  The policy was actually cancelled
effective May 1, 2002.  (Pinto Depo. at 86; Thompson Decl., Ex.
G.)

Worldwide and America's PEO were insured employers under the
Policy.  All premiums assessed by Granite with respect to the
Policy were paid.  (Cook Decl. at ¶7.)  Granite never refunded,
or offered to refund, the premiums paid to it for coverage under
the Policy.  (Eva Hoffman Depo. at 53.)

Employees of Worldwide and America's PEO who were assigned to work at the Kvaerner Philadelphia Shipyard in Pennsylvania made and/or filed state or federal workers' compensation claims against Worldwide and/or America's PEO for injuries allegedly sustained in the course of their employment during the Policy period.  With the exception of payment to one employee, Granite, in conjunction with AIG Claims Services, Inc., refused to defend Worldwide against such claims or to pay any compensation or medical benefits to or on behalf of Claimants.  (Pls.'s Answer to Worldwide's Counterclaim at ¶6.)

## II.  **DISCUSSION**

A.  <u>Worldwide's Motion to Alter or Amend this Court's Order</u>

    1.  <u>Applicable Legal Standard</u>

Federal Rule of Civil Procedure 59(e) permits a party to move "to alter or amend a judgment . . . no later than 10 days after entry of judgment."  Fed. R. Civ. P. 59(e).  This rule provides a conduit through which a party can seek to cure a manifest injustice.  <u>Tecchio v. United States of America</u>, 2004 WL 2827899, at *1 (D.N.J. 2004); <u>P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.</u>, 161 F. Supp. 2d 349 (D.N.J. 2001) (citing <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985), <u>cert. denied</u>, 476 U.S. 1171 (1986)).  Moreover, "to alter or amend" has been interpreted to allow the judgment to be vacated.  <u>See</u> <u>U.S. v. Breyer</u>, 41 F.3d 884, 888-89 (3d Cir. 1994).  Indeed, it would

10

be an unreasonably narrow position to hold that a judgment may be modified and amended only up to the thin line where it amounts to a vacation of the judgment altogether.  <u>See</u> 6A Moore's Federal Practice, ¶59.12 (2d ed. 1982).

In addition, Local Civil Rule 7.1(i) of the United States District Court, District of New Jersey, governs motions for reconsideration.  The rule requires that the moving party set forth the factual matters or controlling legal authority that it believes this Court overlooked when rendering its initial decision.  L. Civ. R. 7.1(i).  Whether to grant reconsideration is a matter within the district court's discretion, but it should only be granted where such facts or legal authority were indeed presented but overlooked.  <u>DeLong Corp. v. Raymond Int'l, Inc.</u>, 622 F.2d 1135, 1140 (3d Cir. 1980), <u>overruled on other grounds by</u> <u>Croker v. Boeing Co.</u>, 662 F.2d 975 (3d Cir. 1981); <u>Williams v.</u> <u>Sullivan</u>, 818 F. Supp. 92, 93 (D.N.J. 1993).  The purpose of a motion for reconsideration "is to correct manifest errors of law or to present newly discovered evidence."  <u>Harsco Corp. v.</u> <u>Zlotnick</u>, 779 F.2d 906, 909 (3d Cir. 1985), <u>cert.</u> <u>denied</u>, 476 U.S. 1171 (1986).

2.  <u>Presence of Diversity Jurisdiction</u>

In its February 7, 2005 Opinion and Order, this Court dismissed Plaintiff's federal claims pursuant to Fed. R. Civ. P. 12(b)(6) and subsequently dismissed Worldwide's summary judgment

11

motion without reaching the merits, concluding that it no longer had subject matter jurisdiction over Count I of Plaintiff's Amended Complaint or over the claims asserted by Worldwide in its counterclaim.  The Court was mistaken.  In fact, although counsel did not raise the point in its briefing of the summary judgment motion before the Court, the Court mistakenly failed to appreciate that diversity jurisdiction exists between Plaintiffs and Worldwide, making dismissal inappropriate.

When subject matter jurisdiction is predicated upon the diversity in citizenship between the parties, pursuant to 28 U.S.C. § 1332, and the federal claims are subsequently dismissed, a court "cannot automatically dismiss the state law claims, but rather must determine if there is an independent basis of jurisdiction for such claims."  Jaquith v. Newhard, 1993 WL 127212, at *18 (S.D.N.Y. 1993) (citing Connecticut Nat'l. Bank v. Fluor Corp., 808 F.2d 957, 963 (2d Cir. 1987).

Diversity jurisdiction pursuant to 28 U.S.C. § 1332 clearly exists here.  Granite State is a corporation with a principal place of business in New Jersey, and is doing business in New Jersey.  (Amended Compl. at ¶2.)  AIG is a corporation with its principal place of business in New York, and does business in New Jersey.  (Id. at ¶3.)  Worldwide is a corporation of the State of Illinois, with its principal place of business in Mississippi. (Worldwide's Answer to Amended Compl. at ¶34.)  Moreover, the

12

amount in controversy exceeds $75,000, representing various alleged damages to Worldwide.  (<u>See</u> Worldwide's Amended Third Party Compl. at ¶8.)

For this reason, therefore, this Court will vacate that portion of its February 7, 2005 Opinion and Order which dismissed Worldwide's summary judgment motion without disposition on the merits, reinstate Worldwide's summary judgment motion and decide the motion on the merits at this time.

B.   <u>Worldwide's Motion for Summary Judgment</u>

Having determined it appropriate to vacate that portion of this Court's February 7, 2005 Opinion and Order which dismissed Worldwide's unopposed summary judgment motion without disposition, the Court now addresses the merits of Worldwide's arguments.

1.   <u>Standard of Review</u>

On a motion for summary judgment, the court must determine whether "there is no genuine issue as to any material fact and that the moving party is entitled to judgment of law." <u>Abraham v. Raso</u>, 183 F.3d 279, 287 (3d Cir. 1999) (citing Fed. R. Civ. Proc. 56(c)).  A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  If the nonmoving party fails to oppose the motion by evidence such as written objection,

memorandum, or affidavits, the court "will accept as true all material facts set forth by the moving party with appropriate record support." Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990) (quoting Jaroma v. Massey, 873 F.2d 17, 21 (1st Cir. 1989)).  If the nonmoving party has failed to establish a triable issue of fact, summary judgment will not be granted unless "appropriate" and only if movants are entitled to a judgment as a matter of law.  Fed. R. Civ. Proc. 56(e); see Anchorage Assocs., 922 F.2d at 175.

     2.   Count I of the Complaint/Worldwide's Counterclaim

     Granite seeks, in Count I of its Amended Complaint, to rescind the Policy and have it declared void ab initio by alleging that the insureds engaged in fraud in obtaining the Policy.  In New Jersey, an insurer may rescind an insurance policy on the grounds of equitable fraud only when the insured makes a false statement in the insurance application that materially affects either the acceptance of the insurance risk, or the hazard assumed by the insurer.  Parker Precision Products Co. v. Metropolitan Life Ins. Co., 407 F.2d 1070, 1073 (3d Cir. 1969); Ledley v. William Penn Life Ins. Co., 651 A.2d 92, 96-97 (N.J. 1995).

     "A misrepresentation is material if it 'naturally and reasonably influence[d] the judgment of the underwriter in making the contract at all, or in estimating the degree or character of

14

the risk, or in fixing the rate or premium." Parker Precision
Products, 407 F.2d at 1073.  That is, the misrepresentation is
"material if it is 'reasonably related to the estimation of the
risk or the assessment of the premium.'" Booker v. Blackburn, 942
F. Supp. 1005, 1008-09 (D.N.J. 1996).  Thus, in seeking to
rescind the Policy based on equitable fraud, Granite must prove:
"(1) a material misrepresentation of a presently existing or past
face; (2) the maker's intent that the other party rely on it; and
(3) detrimental reliance by the other party." First American
Title Ins. v. Lawson, 798 A.2d 661, 667 (N.J. Super. Ct. App Div.
2002), rev'd in part on other grounds, 827 A.2d 230 (N.J. 2003).

    Here, discovery has confirmed that there were no material
misrepresentations and, therefore, the Policy cannot be rescinded
as to Worldwide.  Through the deposition testimony of its
corporate designees, Granite has admitted that the application
for the Policy did not contain any information that was incorrect
or false.  Granite's underwriter, Susan Pinto, admitted that she
had all of the necessary information to evaluate the risk, to set
the initial premium and to determine whether to issue the Policy.

    Moreover, Granite also conducted an independent
investigation of the risk and worksite, the results of which were
reflected in the Report.  The worksite, job duties and job
classification related to the Policy were accurately represented
to Granite.  (Pinto Depo. at 66.)  After visiting the worksite at

15

the underwriter's request, Safety Resources, LLC prepared the
Report providing additional detailed information about, and
analysis of, the risk and the hazard to be insured.  Thus, by
that time, Granite knew that an employee leasing operation was
involved in the insured's business; one of the covered locations
with the Kvaerner ship building site; the workers were to be
covered at the Kvaerner shipyard were engaged in shipbuilding
operations; and Worldwide was supplying the labor for the
Kvaerner worksite, including hiring and training the workers.

Granite was thus able to assess the risk accurately and
calculate premiums.  The fact that UJEX Enterprises was listed as
the applicant for insurance did not materially affect the risk
Granite assumed, or its estimate of the degree or the character
of the risk.  It did not affect the premiums, and did not
influence Susan Pinto's judgment as an underwriter about whether
or not to issue the Policy.  The failure to include Worldwide as
an additional insured on the policy application cannot be
characterized as a material omission, as it did not affect the
hazard that was being assumed by Granite and did not affect the
premiums it initially charged.  Even if this information had
affected the premiums, Granite could have adjusted the premiums,
as it reserved the right to do so based on interim audits.  UJEX
indeed requested that Granite perform such audits; however, even
after it became aware of Worldwide's role upon receipt of the

Report, Granite performed no audits and did not adjust the premium to be charged for the Policy as a result of any information contained in the Report.  Granite did not cancel, terminate or rescind the Policy as a result of the information contained in the Report.  In fact, Granite paid at least one claim under the Policy.

In addition, Granite is not entitled to rescission because it never returned, or offered to return, the premiums paid for coverage under the Policy.  A prerequisite to rescission is that the insurer return the premiums paid.  <u>Liebling v. Garden State Indemnity</u>, 767 A.2d 515, 525 n.1 (N.J. Super. Ct. App. Div. 2001), <u>certif.</u> <u>denied</u>, 782 A.2d 424 (N.J. 2001) (citing <u>Merchants Indemnity Corp. v. Eggleston</u>, 179 A.2d 505, 513 (1962) ("When a contract is obtained by fraud, the law grants the injured party a choice.  He may rescind or affirm.  If he rescinds, he must return what he received, here the premium . . . ")).

There is nothing in the record to support a claim of equitable fraud on the part of Worldwide which could justify Granite's rescission of the Policy.  At the time Granite issued the Policy, it was fully aware of the nature of the risk and the hazard being assumed.  No evidence exists that there were any false statements made that materially affected either the acceptance of the insurance risk, or the hazard assumed by the insurer.  Granite has admitted the facts and thus, has no legal

basis on which to rescind the Policy.  Even assuming Granite has

such a basis, it is prohibited from doing so, as it has not

returned the premiums paid for coverage under the Policy.

Granite is therefore obligated to provide coverage to

Worldwide and Claimants under the Policy.  It's continuing

refusal to do so constitutes a breach of contract, entitling

Worldwide to a judgment dismissing Count I of Plaintiff's Amended

Complaint and entering judgment as to liability on Count I of the

counterclaim.  The Court, having determined that Worldwide is

entitled to summary judgment on Count I of its counterclaim, need

not address Worldwide's alternative argument that it is entitled

to summary judgment on Count II of that counterclaim.  Count I of

Plaintiff's Amended Complaint will be dismissed, as Granite's

claim that the Policy should be declared void <u>ab</u> <u>initio</u> lacks

merit.

3.   <u>Counts IV-IX of the Complaint</u>

In its Opinion and Order of February 7, 2005, this Court

dismissed Counts II and III of Plaintiff's Amended Complaint as

legally insufficient.  In its original motion for summary

judgment, Worldwide joined in the motion of certain co-defendants

to dismiss Counts II through XII of the Complaint.  Thus, the

Court now turns to the remaining state law claims against

Defendant Worldwide.

To recapitulate, Granite's Amended Complaint proceeds on the following remaining claims against Worldwide: New Jersey State RICO violation (Count IV); New Jersey State RICO conspiracy (Count V); common law fraud (Count VI); conspiracy to commit common law fraud (Count VII); and negligent misrepresentation (Count VIII).  As the New Jersey State RICO statute substantially mirrors the requirements of the federal RICO statute, (see Maxim Sewerage Corp. v. Monmouth Ridings, 640 A.2d 1216, 1218 (N.J. Super. Ct. Law Div. 1993), Counts IV and V must fail for the same reasons as set forth with respect to Counts II and III in this Court's February 7, 2005 Opinion.  (See February 7, 2005 Opinion.)  The Court will now consider Worldwide's motion with respect to the sole remaining claims against it, namely the fraud and negligent misrepresentation claims.

"The five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Schenkel v. Flaster, 2002 WL 31831555, at *2 (3d Cir. 2002) (citing Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997) and Jewish Ctr. of Sussex County v. Whale, 432 A.2d 521, 524-25 (N.J. 1981)).  Moreover, it is well settled that the elements of fraud must be pled with particularity.

19

In their Amended Complaint, Plaintiffs allege that
Defendants materially misrepresented employment and payroll
figures and employment classification codes in its applications
for workers' compensation insurance.  (Amended Compl. at ¶125.)
However, the record suggests that the figures Defendants
communicated to Plaintiffs in their applications for insurance
were preliminary and based only on Defendants' best estimates,
which, at the time of their communication to Plaintiffs through
insurance applications, were reasonable.  The nature of such
estimates cannot give rise to a claim of common law fraud, as
estimates are inherently imprecise and incapable of absolute
exactitude, representing instead a mere expression of one's
opinions as to what employment and payroll figures will be in the
future.  Nor does the record reflect any evidence of an intent to
defraud through such estimations.  Indeed, an expression of
opinion cannot form a basis for a common law fraud claim.  <u>Daibo
v. Kirsch</u>, 720 A.2d 994, 999-1000 (N.J. Super. Ct. App. Div.
1998).

Moreover, Rule 9(b), Fed. R. Civ. P., imposes a heightened
pleading requirement of factual particularity with respect to
allegations of fraud, stating, "In all averments of fraud or
mistake, the circumstances constituting fraud or mistake shall be
stated with particularity."  Fed. R. Civ. P. 9(b).  "Rule 9(b)
requires a plaintiff to plead (1) a specific false representation

[or omission] of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage." Shapiro v. UJB Financial Corp., 964 F.2d 272, 284 (3d Cir. 1992) (internal citations omitted).  In addition, the Third Circuit has held that Rule 9(b) requires a plaintiff to identify the source of the allegedly fraudulent misrepresentation or omission.  See Klein v. General Nutrition Cos., Inc., 186 F.3d 338, 345 (3d Cir. 1999) ("The complaint fails to attribute the statement to any specific member of GNC management.  Fed. R. Civ. P. 9(b) requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements.")

Here, the Amended Complaint is utterly devoid of the averments required by Rule 9(b).  The pleadings fail to identify the speaker and the content of the alleged misrepresentations which give basis to the common law fraud counts.  The claim is instead based only on some falsely deflated employment figures, some falsely deflated payroll figures, and some false classification codes, without further details.  (Amended Compl. at ¶125.)  Rule 9(b) prohibits such generalizations and the common law fraud (Count VI) and conspiracy to commit common law fraud (Count VII) claims must be dismissed.

21

Finally, this Court finds that the remaining claim against Defendant Worldwide, specifically, Plaintiffs' negligent misrepresentation claim (Count VIII), must also be dismissed. "Negligent representation is '[a]n incorrect statement, negligently made and justifiably relied upon . . . .' H. Rosenblum, Inc. v. Adler, 461 A.2d 138, 142-43 (N.J. 1983). 'The actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission.' Kaufman v. i-Stat Corp., 754 A.2d 1188, 1195 (N.J. 2000)." Schenkel v. Flaster, 2002 WL 31831555, at *2 (3d Cir. 2002). Moreover, a plaintiff must show that it was a reasonably foreseeable recipient of the defendant's misrepresentation. Karu v. Feldman, 574 A.2d 420 (N.J. 1990). Here, Plaintiffs have failed to allege which communications were incorrect at the time they were made and how Plaintiffs relied upon those alleged misrepresentations. Plaintiffs have not demonstrated how the information contained in the insurance applications at issue were known to Defendants to be false. Therefore, Plaintiffs' negligent misrepresentation claim against Defendant Worldwide will also be dismissed.

### III.   CONCLUSION

For the reasons discussed above, Defendant Worldwide Labor Support of Illinois, Inc.'s motion to alter or amend this Court's February 7, 2005 Order will be granted as will Defendant's reinstated motion for summary judgment.  The accompanying Order will be entered.


**July 11, 2005**                           **s/ Jerome B. Simandle**
DATE                                        JEROME B. SIMANDLE
                                            United States District Judge

23